IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN M. GORAL,<br>　　　Plaintiff, | )<br>)<br>) | |
| vs. | )<br>) | Civil Action No. 06-1430 |
| PYRAMID HEALTHCARE,<br>　　　Defendant. | )<br>)<br>) | Judge Cercone<br>Magistrate Judge Mitchell |

REPORT AND RECOMMENDATION

I.　　　Recommendation

It is respectfully recommended that the motion for summary judgment submitted on behalf of Defendant, Pyramid Healthcare (Docket No. 14) be granted and that judgment be entered accordingly.

II.　　　Report

Plaintiff, John M. Goral, brings this action pursuant to 42 U.S.C. §§ 2000e to 2000e-17 (Title VII). He alleges that Defendant, Pyramid Healthcare, his former employer, engaged in reverse racial discrimination against him and that it retaliated against him when he complained about this reverse racial discrimination when it gave preferential treatment to black staff members, suspended him from his position as a registered nurse because of unsubstantiated allegations of sexual harassment on July 28, 2005 and then discharged him from his employment on September 2, 2005.

Presently before this Court for disposition is a motion for summary judgment, filed by Defendant. For the reasons that follow, the motion should be granted.

Facts[1]

Plaintiff is a 45 year-old registered nurse who worked at-will for Pyramid Healthcare, Inc. ("Pyramid") for approximately five months between March 28, 2005, and September 2, 2005. (Goral Dep. at 6, 15, 61).[2] Pyramid provides inpatient treatment to adult men and women suffering from chemical dependency. (Ward Aff. ¶ 2.)[3] Pyramid employed nine nurses including Plaintiff at its Wilkinsburg facility. (Goral Dep. at 9.) Five nurses were white including Plaintiff and the other four nurses were black. (Goral Dep. at 10.) Plaintiff's direct supervisor was Nursing Supervisor Robin Ward. (Goral Dep. at 11; Ward Aff. ¶¶ 1, 3.) Linda Williams was the director of the facility. (Goral Dep. at 9.)

Plaintiff alleges that he experienced no problems at work in March or April of 2005. (Goral Dep. at 21.) In May of 2005, Plaintiff began to complain to coworkers about various issues, including his belief that white nurses did more work than black nurses, and he called Sue McKewon and Barbara Jenkins at their homes to complain. (Goral Dep. at 21.) After receiving complaints from Ms. McKewon, Ms. Jenkins and Michael Harper about Plaintiff's behavior, supervisor Robin Ward spoke to Plaintiff about complaining to coworkers on June 6, 2005.

---

[1] These facts are taken from the Statement of Material Facts section of Defendant's brief (Docket No. 15) and they are supported by citations to the record in accordance with Local Rule 56.1(B)(1). Plaintiff has not responded to these statements at all, much less with citations to the record as required by Local Rule 56.1(C)(1). Pursuant to the Local Rules, Defendant's facts should be deemed admitted. W.D.PA.LR. 56.1(E). Moreover, except for a few facts as noted below, Plaintiff does not appear to contest Defendant's facts. Rather, he contends that the allegations of sexual harassment made against him were falsified to justify his suspension. This argument is addressed below.

[2] Def.'s Br. (Docket No. 15) Ex. A.

[3] Docket No. 15 Ex. B.

(Ward Aff. ¶ 8; Goral Dep. at 22.)

Ms. Ward stressed to Plaintiff the importance of being a "team player" and told him that he should bring work-related concerns to her attention rather than to coworkers. Plaintiff's complaints and statements to coworkers allegedly included the following:

- The nurses did not know what they were doing;

- Robin Ward did not know what she was doing;

- All nurses and Robin Ward should be removed and replaced with "Plaintiff's people";

- If anyone crosses Plaintiff, they usually get what they deserve;

- Plaintiff did not like how the facility was run and could run it better himself.

(Ward Aff. Ex. B.)

Pyramid did not discipline Plaintiff at this time. However, Ms. Ward did create a written record of her conversation with him. (Ward Aff. ¶10 & Ex. B.)

On July 17, 2005, a female client submitted a written complaint to Pyramid alleging unprofessional behavior and sexual harassment on the part of Plaintiff. The alleged behavior and harassment included locking the client in a room for several hours, threatening to "make sure (the client) sleep(s)" by drugging the client, discussing in a sexual manner the client's piercings and underwear and inquiring about the client's sexual fantasies. (Ward Aff. ¶ 11 & Ex. C; Goral Dep. at 35-37.) A second female client also submitted a written complaint on July 17, 2005, alleging that Plaintiff "talks to us girls about sex and things he shouldn't be saying," and is "very unprofessional, swearing when he talks to us, making us feel very uncomfortable." (Ward Aff. ¶ 12 & Ex. D; Goral Dep. at 35-37.) The client also accused Plaintiff of inquiring about her

3

sexual fantasies and stated that Plaintiff used the phrases "niggers" and "junkies," thereby making the client very uncomfortable. A third female client submitted a written complaint on July 17, 2005 as well, alleging similar inappropriate and harassing behavior by Plaintiff. (Ward Aff. ¶ 13 & Ex. E; Goral Dep. at 35-37.)

The same female clients also verbally complained to Dr. Frank M. Kunkel, the Medical Director at Pyramid, during his rounds on July 17, 2005, about sexual harassment and verbal abuse on the part of Plaintiff. Dr. Kunkel wrote a written narrative of the complaints, in which he indicated that one of the female clients felt that Plaintiff was "joking" and that he (Dr. Kunkel) could not attest to the veracity of the complaints. (Ward Aff. ¶ 14 & Ex. F.)

Following Pyramid's receipt of the client complaints, Robin Ward, Linda Williams and Human Resources Coordinator Jill Wharrey met with Plaintiff on July 18, 2005. (Ward Aff. ¶ 15 & Ex. G; Goral Dep. at 38.) Plaintiff denied any inappropriate behavior but admitted to discussing a female client's hair and tongue piercing. He also suggested that the clients' complaints were "typical of addicts." (Ward Aff. ¶ 16.) Ms. Ward, Ms. Williams and Ms. Wharrey proceeded to review Pyramid's Therapeutic Boundaries policy and Staff Code of Ethics with Plaintiff and reissued additional copies to him. (Ward Aff. ¶ 17; Goral Dep. at 42.) The terms of Pyramid's Therapeutic Boundaries policy and Staff Code of Ethics include the following:

- Refrain from any inappropriate verbal or written communication (i.e., drug related, sexual, e-mail, letters);

- Refrain from deliberately doing harm to a client, either physically or psychologically. Do not verbally assault, ridicule, attempt to subjugate or endanger a client.

(Ward Aff. Ex. G.)

On July 26, 2005, a female client submitted another written complaint alleging that Plaintiff had advised her to "lay in bed at night and fantasize and get crazy with yourself." The client also complained of foul language and racial slurs by Plaintiff and further alleged that Plaintiff had stated, "with a haircut like that, you look like you date the brothers." (Ward Aff. ¶ 18 & Ex. H; Goral Dep. at 44.)

Pyramid received yet another written complaint regarding Plaintiff on July 26, 2005, which contained allegations that were similar to the previous complaints. (Ward Aff. ¶ 19; Goral Dep. at 44.) This complaint demanded that "something be done about (Plaintiff's) sexual harassment." (Ward Aff. Ex. I..) Pyramid subsequently investigated the complaints and determined them to be credible. (Ward Aff. ¶ 20.)

Pyramid suspended Plaintiff for unprofessional behavior from July 28, 2005 to August 2, 2005. (Ward Aff. ¶ 21; Goral Dep. at 46-48; Compl. ¶ 7.) Plaintiff returned to work on August 3, 2005, and Robin Ward issued a written warning, advising Plaintiff that he would receive direct supervision for the next 90 days with performance reviews to be conducted every 30 days. (Ward Aff. ¶ 21 & Ex. J.)

After Plaintiff's return to work on August 3, 2005, a client submitted an undated written complaint alleging that Plaintiff had asked the client, "Why did you come here? You should (have gone) to White Deer Run." (Ward Aff. ¶ 22; Goral Dep. at 49-51.) White Deer Run is a facility that competes with Pyramid. (Ward Aff. ¶ 22.) The client also alleged that Plaintiff had advised the client that the facility "is a rat hole." (Ward Aff. ¶ 22 & Ex. K.) Around this time, a second client submitted an undated written complaint alleging that Plaintiff had exhibited abusive and inappropriate behavior and had refused to provide the client's medication. (Ward

5

Aff. ¶ 23 & Ex. L; Goral Dep. at 49-51.) Finally, a third client submitted a written complaint on August 14, 2005, alleging that Plaintiff had advised the client that he would not receive proper treatment at Pyramid's facility because "this place is a shit hole, rat infested, dirty place." (Ward Aff. ¶ 24 & Ex. M; Goral Dep. at 49-51.) Plaintiff also allegedly told the client that the "Afro-American nursing staff is uneducated ... overweight and lazy … (and) leave shit dirty, bullshit and always have some type of drama going on." (Ward Aff. Ex. M.)

On August 17, 2005, Plaintiff initiated a verbal altercation with several staff members, including the facility's Program Director, Linda Williams. Plaintiff was apparently upset because he believed that Sue Morrissey, a white coworker, had improperly dispensed medication to a client. Plaintiff repeatedly shouted that he was "going to write (Ms. Morrissey) up" for the incident. (Ward Aff. ¶¶ 25-26 & Ex. N; Goral Dep. at 52-55.) When told by Linda Williams that he did not have the authority to discipline a coworker, Plaintiff became belligerent, and stated that Ms. Williams did not know her job or Plaintiff's job. (Ward Aff. ¶¶ 25-26 & Ex. N; Goral Dep. at 56-57.)

Pyramid suspended Plaintiff in light of the incident on August 17, 2005. (Ward Aff. ¶ 27; Goral Dep. at 58.) Pyramid indicates that, after investigating Plaintiff's continued unprofessional behavior and providing Plaintiff with an opportunity to submit a statement, it discharged Plaintiff on or about September 2, 2005. (Ward Aff. ¶ 28; Goral Dep. at 61.) Plaintiff's termination letter states that he was discharged for continued unprofessional behavior and for insubordinate conduct to Program Director Linda Williams. (Ward Aff. ¶ 28 & Ex. O; Goral Dep. at 61.)

Following his discharge, Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging reverse racial discrimination and retaliation by Pyramid.

(Goral Dep. at 62.)

Procedural History

Plaintiff filed this action on October 26, 2006. The complaint alleges that Defendant discriminated against Plaintiff on the basis of his race (white) and retaliated against him for complaining about reverse racial discrimination when it gave preferential treatment to black staff members, suspended him from his position as a registered nurse because of unsubstantiated allegations of sexual harassment and then discharged him from his employment on September 2, 2005, in violation of Title VII. On September 28, 2007, Defendant filed a motion for summary judgment.

Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

Defendant argues that: 1) Plaintiff's complaints about being treated unfavorably as compared to black employees do not constitute adverse employment actions and are without any evidentiary support; 2) with respect to his suspension and termination, he has not established a prima facie case of reverse racial discrimination; 3) even if he has, it has articulated legitimate, nondiscriminatory reasons for the actions it took and he has failed to produce evidence from which a factfinder could conclude that the proffered reasons are a pretext for unlawful reverse racial discrimination; and 4) he cannot state a prima facie case of retaliation discrimination because he cannot demonstrate a causal link between his alleged protected activity and his discharge and even if he can, he has failed to produce evidence of pretext.

Prima Facie Case of Reverse Racial Discrimination

Title VII provides that it is an unlawful employment practice for an employer to discriminate against an individual with respect to conditions of employment because of his race. 42 U.S.C. § 2000e-2(a). In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination indirectly following the shifting burden analysis set forth by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973) and refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278-79 (3d Cir. 2000).

As the Court of Appeals for the Third Circuit has stated:

> The existence of a prima facie case of employment discrimination is a question of law that must be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified;

8

and (4) under circumstances that raise an inference of discriminatory action...

Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (footnote and citations omitted).

If the employee presents a prima facie case of discrimination, the employer must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802. If the employer specifies a reason for its action, the employee must have an opportunity to prove the employer's reason for the adverse employment action was a pretext for unlawful discrimination. Id. at 804. The Court of Appeals for the Third Circuit has stated that:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

In the case of a plaintiff who is not a member of a protected class, the Court of Appeals has held that:

> a plaintiff who brings a "reverse discrimination" suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff "less favorably than others because of [his] race, color, religion, sex, or national origin."

Iadimarco v. Runyon, 190 F.3d 151, 163 (3d Cir. 1999) (quoting Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978)). In that case, Charles Iadimarco, a white male, was not selected for a manager position he had applied for despite being the most highly ranked applicant. Instead, after the two other candidates accepted other positions, the selecting official (Towler) actively–and after the deadline for applications had passed–recruited a black woman (Williams)

9

who had no ranking and then hired her for the position. In addition, Iadimarco had an engineering degree (which he had been told was a prerequisite for the position) and Williams did not. Finally, he pointed to a memo issued by Towler's supervisor asserting the importance of hiring minority candidates to increase diversity and the fact that, out of twenty-seven plant managers hired, 74% of them were white males. The court stated that "a fact finder could ... conclude that Towler tried to manipulate the process to hire Williams because he had already hired many White supervisors." Id. at 165. Given the totality of these circumstances, the court concluded that Iadimarco stated a prima facie case of reverse racial discrimination.

In this case, Pyramid argues that nothing about the circumstances surrounding Plaintiff's suspension or discharge could be viewed by the trier of fact as evidence that it was treating him less favorably than others because of his race. Indeed, Pyramid points out that it did not receive client complaints about any staff member other than Plaintiff.

Plaintiff's evidence consists of the following: 1) his own affidavit, in which he contends that he experienced disparate treatment as compared to black staff members and that a nurse (Rebecca Leist) told him that another nurse (Sue Morrissey) was soliciting patients to submit false accusations of sexual harassment against him (Pl.'s Resp. Ex. A)[4]; 2) a statement from Sue McKewon, a white nurse, attesting to his character (Pl.'s Resp. Ex. E); 3) a statement from Barbara Jenkins, another white nurse, also attesting to his character (Pl.'s Resp. Ex. D); 4) Dr. Kunkel's letter, in which he states that one of the female clients indicated that she believed that Plaintiff was "just joking" and that he could not verify the veracity of the female clients' complaints against Plaintiff because he would only be guessing (Pl.'s Resp. Ex. C); and 5) a

---

[4] Docket No. 16.

statement from a Pyramid client that she did not believe the accusations made about Plaintiff because one of his accusers "had a tendency to lie about things and she stole my makeup" (Pl.'s Resp. Ex. F).

With respect to unfavorable treatment, Plaintiff complains that he did not receive the "first shift" (7:00 a.m. to 3:30 p.m.) after completing a thirty-day probation period; that black nurses received better shifts and more overtime; that they were not disciplined for leaving the facility unclean and unstocked, using cell phones for personal reasons, arriving late and leaving early, and knitting and watching television while they should have been working; that they were permitted to use the Internet but he was not; that they were using derogatory language against him; and that white nurses (including him) received a heavier workload including performing more patient admissions. These allegations do not constitute tangible employment actions for purposes of Title VII. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

In addition, Pyramid notes that Plaintiff was not disciplined for talking on a cell phone, knitting or conversing, nor has he pointed to any instance in which black nurses were permitted to do these things while white nurses were not. His only evidence to support the accusation about white nurses having to perform more patient admissions consists of two "PPD logs" indicating that, on certain days, white nurses performed more patient admissions. (Pl.'s Resp. Ex. B.) However, as Pyramid notes, Plaintiff has failed to develop the factual record to place these logs into any context.

11

With respect to the statements he submits to argue pretext as to his suspension, the Court of Appeals has held that "Rule 56 of the Federal Rules of Civil Procedure states that motions both for and in opposition to summary judgment may be supported by affidavits; unsworn statements ... fail to meet the requirement." Small v. Lehman, 98 F.3d 762, 764 n.5 (3d Cir. 1996) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970)). The unsworn statements made by the Pyramid client and Sue McKewon are insufficient.

Moreover, even if the Court were to consider them, they simply reflect the opinions of these two individuals that Plaintiff was a good nurse and do not make any reference to reverse racial discrimination. Plaintiff admitted this at his deposition. (Goral Dep. at 29.) The statement by Barbara Jenkins was sworn before a notary. However, as Plaintiff admitted at his deposition, nothing in her statement makes any reference to race or discrimination. (Goral Dep. at 29-31.)

With respect to Dr. Kunkel's letter, as Defendant points out, the fact that Dr. Kunkel could not verify the veracity of the allegations made by the female clients against Plaintiff in no way demonstrates that the allegations are false, much less that they were solicited by a nurse in order to fabricate a case against him. In addition, Robin Ward states that Pyramid investigated the complaints about Plaintiff's behavior and concluded that they were credible. (Ward Aff. ¶ 20.)

Plaintiff's evidence is not sufficient to establish a prima facie case of reverse racial discrimination. However, as Pyramid argues in the alternative, the Court should address whether, even assuming Plaintiff could state a prima facie case, he has proffered evidence from which a trier of fact could conclude that Pyramid's proffered reasons for its actions are a pretext for unlawful reverse racial discrimination.

Defendant's Proffered Reason

The burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's suspension and termination. It cites the reasons identified in the record, namely the following: 1) he was suspended from July 28, 2005 to August 2, 2005 because Pyramid received numerous reports of unprofessional behavior from clients, which Pyramid investigated and determined to be credible; and 2) he was terminated on September 2, 2005 for unprofessional behavior including insubordinate conduct to Program Director Linda Williams.

Defendant has met its burden of production. Therefore, Plaintiff is required to point to evidence from which the trier of fact could conclude that Defendant's proffered reason is a pretext for unlawful reverse racial discrimination.

Plaintiff's Evidence of Pretext

Plaintiff proceeds along "Fuentes prong one" by arguing that he has submitted evidence from which a factfinder could reasonably disbelieve the employer's articulated legitimate reason. Keller v. ORIX Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). Specifically, he contends that: he did not engage in the acts of sexual harassment he was accused of, and he was not given an opportunity to respond regarding the incident on August 17, 2005 that led to his termination. Pyramid contends that this evidence is insufficient to meet his burden.

With respect to his suspension, he contends that Pyramid improperly believed "un-witnessed allegations of sexual harassment of patients." (Goral Aff. at 3.) However, the Court of Appeals has emphasized that "we do not sit as a super-personnel department that reexamines an entity's business decisions." Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326, 332 (3d Cir.

13

1995) (citation omitted). Or, as stated somewhat differently, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. The issue before the Court is not whether Pyramid conducted the most complete investigation it could have into the matter, or whether it erred by choosing to believe its clients rather than Plaintiff. Rather, the issue is whether he has pointed to evidence from which a finder of fact could conclude that Pyramid's proffered reason for his suspension is a pretext for unlawful reverse racial discrimination. He has not done so.

He presents no evidence to dispute the reason proffered for his termination, namely his insubordinate conduct toward Linda Williams. He states that he was not provided with any evidence against him and he was not provided an opportunity to respond to specific allegations. (Goral Aff. at 4.) However, at his deposition, he indicated that he "might have sent a letter." (Goral Dep. at 60.) The letter terminating Plaintiff's employment specifically states that his "statement concerning this incident dated August 28, 2005 admits insubordinate conduct to Ms. Linda Williams, Program Director." (Ward Aff. Ex. O.) At his deposition, he admitted writing a letter in which he indicated that he stated to Linda Williams "you're wrong and you obviously don't know your job or mine." (Goral Dep. at 57-58.)

Plaintiff has failed to point to such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." Id. Therefore, with respect to Plaintiff's reverse racial discrimination claim, Defendant's motion for summary

judgment should be granted.

### Retaliation Discrimination

Discrimination against an individual who has opposed a practice prohibited by Title VII or who has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the statute is itself actionable conduct. 42 U.S.C. § 2000e-3(a).

The Court of Appeals has long held that:

> To establish a prima facie case of retaliation, a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.

Weston v. Commonwealth of Pa., 251 F.3d 420, 430 (3d Cir. 2001) (citations omitted).

Recently, the Supreme Court altered the analysis for evaluating retaliation claims. The Court rejected the position taken by the Third Circuit and others that an employee must point to an adverse employment action: "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2412-13 (2006). However, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (citations omitted).

As summarized by the Court of Appeals, the prima facie case elements are now as follows: 1) the plaintiff engaged in activity protected by the anti-discrimination statute; 2) the employer took action that a reasonable employee would have found to be materially adverse in that it might well have dissuaded a reasonable worker from making or supporting a charge of

discrimination; and 3) there is a causal connection between the plaintiff's opposition to or participation in proceedings against unlawful discrimination and the employer's action. Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006).

Defendant does not challenge the first two prongs of the prima facie case for retaliation. It does not deny that he complained about reverse racial discrimination[5] and that he was subjected to adverse employment actions when he was suspended and terminated. However, it contends that he cannot demonstrate a causal connection between any protected activity and the decisions about which he complains. In addition, it argues that it has presented legitimate, non-discriminatory reasons for the actions about which he complains and that he has not presented evidence from which the trier of fact could infer that these reasons were a pretext for unlawful retaliation discrimination.

First, it argues that, although he contends that he was terminated "immediately" after he allegedly complained to management about racism, the record reflects that he was suspended on August 17, 2005, immediately following his altercation with Sue Morrissey and Linda Williams, but that he was not terminated until September 2, 2005, after his conduct was reviewed by Pyramid's Human Resources Department.

The Court of Appeals has explained that a plaintiff can substantiate a causal connection between the protected activity and an adverse employment action by: 1) showing that the temporal proximity is "unduly suggestive"; or 2) showing "inconsistencies in the defendant's testimony"; or 3) pointing to ongoing antagonism. Farrell v. Planters Lifesavers Co., 206 F.3d

---

[5]Pyramid correctly notes that he could not have been not retaliated against for filing a complaint with the EEOC, because he did not take this action until after he was terminated. (Goral Dep. at 62.)

271, 280-81 (3d Cir. 2000). The court has noted that, "[w]ith one exception, we have never held that timing alone can be sufficient to establish causation." Weston, 251 F.3d at 431 n.5 (citing a case in which an employee's dismissal two days after the company learned of his EEOC complaint was sufficiently persuasive to satisfy the causation element). In Weston, the court held that alleged incidents more than one year apart, without other evidence, were insufficient to establish a causal link). Id. at 431-32.

In this case, the delay would only have been sixteen days, which could be considered unduly suggestive. Thus, Plaintiff has stated a prima facie case of retaliation discrimination.

However, as indicated above, Pyramid has proffered a legitimate, nondiscriminatory reason for his termination–his insubordinate behavior toward Program Director Linda Williams– and he has not pointed to evidence from which a trier of fact could conclude that this reason is a pretext for unlawful retaliation discrimination. Therefore, with respect to this claim, the motion for summary judgment should be granted.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of Defendant, Pyramid Healthcare (Docket No. 14) be granted and that judgment be entered accordingly.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                    Respectfully submitted,

                    s/Robert C. Mitchell
                    ROBERT C. MITCHELL
                    United States Magistrate Judge

Dated: November 29, 2007